United States District Court
District of Connecticut
FILED AT NEW HAVEN

_3/21_ ,20_24_

By_ N. Langello _
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

IN THE MATTER OF THE SEARCHES OF
THREE CELLULAR DEVICES

Case No. 3:24MJ_249_(RMS)

## AFFIDAVIT IN SUPPORT OF
## APPLICATIONS UNDER RULE 41 FOR
## WARRANTS TO SEARCH AND SEIZE

I, Anthony Crisera, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of applications under Rule 41 of the Federal Rules of Criminal Procedure for three search warrants authorizing the examination of the following cellular telephones:

   a. **Subject Phone 1**: a blue Motorola cellular telephone, which was seized from Angel Eugenio BANCES CHAPONAN's ("BANCES CHAPONAN") person incident to arrest on March 13, 2024, and which is currently in the custody of the FBI in New Haven, Connecticut, as further described in Attachment A-1;

   b. **Subject Phone 2**: a silver Samsung cellular telephone in a hard case with "Mario" on the back, which was seized from Angel Giancarlo BELLIDO COSIO's ("BELLIDO COSIO") person incident to arrest on March 13, 2024, and which is currently in the custody of the FBI in New Haven, Connecticut, as further described in Attachment A-2;

   c. **Subject Phone 3**: a blue/grey Samsung cellular telephone with a blue and bright yellow case with a clear back, which was seized from the glove compartment of a rental vehicle utilized by BELLIDO COSIO and BANCES CHAPONAN incident

to their arrests on March 13, 2024, and which is currently in the custody of the FBI in New Haven, Connecticut, as further described in Attachment A-3.

2.      **Subject Phone 1**, **Subject Phone 2**, and **Subject Phone 3** are collectively referred to herein as "**the Devices**." The applied-for warrants would authorize the examinations of **the Devices** and the extraction from that property of electronically stored information described in Attachment B-1 (for **Subject Phone 1**), Attachment B-2 (for **Subject Phone 2**), and Attachment B-3 (for **Subject Phone 3**).

3.      For the reasons set forth herein, I have probable cause to believe, and I do believe, that the electronically stored information on **the Devices** contains evidence of violations of Title 18, United States Code, Sections 1029(a)(2), (b)(1), and (b)(2) (Fraud and Related Activity in Connection with Access Devices and Attempt and Conspiracy)[1] and Title 18, United States Code, Section 1028A (Aggravated Identity Theft) (the "Target Offenses").

4.      I am a Special Agent employed by the Federal Bureau of Investigation ("FBI").  As such, I am a law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code; that is, an officer empowered by law to conduct investigations of, and make arrests for, offenses enumerated in Section 2516 of Title 18.

5.      I have been employed by the FBI since January 2021. I am currently assigned to investigate a variety of criminal matters, including financial crimes such as securities fraud, bank

---

[1] Section 1029 makes it unlawful to "knowingly and with intent to defraud, traffic in, or use one or more unauthorized access devices during any one-year period, and by such conduct obtain anything of value aggregating $1,000 or more during that period." The term "access device" includes credit cards, *see* 18 U.S.C. 1029(e)(1), and an "unauthorized access device" is defined as "any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud," *id.* § 1029(e)(3).

fraud, wire fraud, mail fraud, and cyber-enabled fraud. During my training at the FBI Academy in Quantico, Virginia, I received instruction regarding a variety of investigative and legal matters, including the topics of Fourth Amendment searches and seizures, the drafting of search and seizure warrant affidavits, and the principles of probable cause. I am a Certified Public Accountant ("CPA"), and prior to my employment as a Special Agent of the FBI, I was employed as a Senior Audit Associate at a major accounting and auditing firm in Charlotte, North Carolina. As a CPA, I have gained experience in examining finance-related business processes, analyzing financial information, and evaluating business expenditures.

6.      I have participated in this investigation and, as a result of my participation and information received from other law enforcement officers, I am thoroughly familiar with the circumstances of the investigation and the information set forth in this affidavit. The statements contained in this affidavit are based on: (1) my personal participation in the investigation; (2) information provided to me by Special Agents of the FBI and state and local law enforcement officers; and (3) my training and experience. This affidavit is intended to show only that there is sufficient probable cause for the issuance of the requested warrants and does not set forth all of my knowledge about this matter.

**PROBABLE CAUSE**

7.      On March 13, 2024, I signed an affidavit in support of a Criminal Complaint and Arrest Warrants (hereinafter, the "Complaint Affidavit"). The Complaint Affidavit has been attached as Attachment C and is incorporated herein. As set forth more fully in the Complaint Affidavit, on the afternoon of March 13, 2024, BELLIDO COSIO and BANCES CHAPONAN were arrested in Milford, Connecticut under circumstances set forth more fully in the Complaint

Affidavit and below.[2] The FBI seized **the Devices** from BELLIDO COSIO and BANCES CHAPONAN incident to their arrests on this date.

8.     Since in or around January 2024, the FBI has been investigating BELLIDO COSIO, BANCES CHAPONAN, and others, known and unknown, for possible violations of the Target Offenses in the District of Connecticut and elsewhere. In the course of the investigation, as described more fully in the Complaint Affidavit, which is incorporated herein, BELLIDO COSIO, BANCES CHAPONAN, and others have been observed using cellular telephones to communicate with one another while committing the Target Offenses.

9.     During a portion of the period in which violations of the Target Offenses occurred, BELLIDO COSIO is believed to have used a cellular telephone assigned call number (862) 428-9993 ("Bellido Cosio Telephone"), which was activated on or about November 4, 2023, and deactivated on or about January 27, 2024.

10.     Further, on or about January 15, 2024, a Sergeant with the Fairfax County Police Department in Virginia sought and obtained search warrants for, among other things, historical cell-site location information for Bellido Cosio Telephone and for telephone number (917) 431-6128, which was being used by BANCES CHAPONAN ("Target Telephone 1") and is believed to correspond with **Subject Phone 1** as set forth below. The search warrants requested information for the period of July 25, 2023, through January 15, 2024.

---

[2] United States Magistrate Judge Robert M. Spector subsequently signed a Criminal Complaint on the basis of the Complaint Affidavit. BELLIDO COSIO and BANCES CHAPONAN were presented in court and are currently detained.

11.     In addition, on or about February 16, 2024, I obtained a federal search warrant in the District of Connecticut for, *inter alia,* prospective information for thirty (30) days associated with Target Telephone 1 (No. 3:24MJ151 (MEG)). The search warrant was withdrawn and reissued on or about February 20, 2024.

12.     Further, on or about February 27, 2024, I obtained a federal search warrant in the District of Connecticut for, inter alia, prospective information for thirty (30) days associated with telephone number (857) 202-1684 ("Target Telephone 2") (No. 3:24MJ164 (MEG)), which was being used by BELLIDO COSIO and is believed to correspond to **Subject Phone 2**. Pursuant to those search warrants, the FBI was obtaining prospective location information for both Target Telephone 1 and Target Telephone 2 until the arrests on or about March 13, 2024.

**A.  February 10, 2024 Connecticut Theft**

13.     On or about February 10, 2024, the FBI identified a victim whose wallet was believed to have been stolen at the Trader Joe's in Orange, Connecticut on or about the same date at approximately noon. Subsequent investigation revealed that the victim's USAA credit card and M&T Bank debit card had been fraudulently used to conduct purchases at Costco in Milford, Connecticut and at BJ's Wholesale Club in Stratford, Connecticut on that date. The below photograph, which was captured from surveillance footage obtained from Trader Joe's for the timeframe of the alleged theft, depicts two individuals that I believe to be BELLIDO COSIO and BANCHES CHAPONAN leaving the Trader Joe's in Orange, Connecticut at approximately 11:50 a.m. on or about February 10, 2024.[3]

_____

[3] Additional identification information is described in the Complaint Affidavit, incorporated herein.



*BELLIDO COSIO and BANCES CHAPONAN leaving Trader Joe's in Orange, CT on or about Feburary 10, 2024.*

14.     Based on information obtained from the victim and from Costco, it appears that the victim's USAA credit card was fraudulently used at Costco in Milford, Connecticut on or about February 10, 2024, at approximately 12:30 p.m., for an unauthorized purchase of an Apple MacBook, an Apple iPad, and Biofreeze, totaling around $3,235.45. Additionally, it appears that the victim's M&T Bank debit card was used at approximately 12:51 p.m. to attempt an unauthorized purchase for approximately $1,567.20, but the transaction was voided. At approximately 12:52 p.m., the victim's M&T Bank debit card was successfully used to fraudulently purchase an Apple iPad and Systane Ultra eyedrops, totaling approximately $1,184.13. The following photographs, which were captured from surveillance video obtained

from Costco for the timeframe of the alleged unauthorized transactions, depict an individual I believe to be BANCES CHAPONAN and another individual ("Subject 3") at Costco with what appears to be merchandise illegally purchased using the victim's credit and debit cards.



*BANCES CHAPONAN at Costco in Milford, CT on or about February 10, 2024.*



*Subject 3 at Costco in Milford, CT on or about February 10, 2024.*

15.     According to information obtained from the victim and from BJ's Wholesale Club, the victim's M&T Bank debit card was also used at BJ's Wholesale Club in Stratford, Connecticut to conduct an unauthorized purchase of an Apple Watch for approximately $372.21 on or about February 10, 2024, at approximately 1:30 p.m. Based on a review of surveillance video obtained from BJ's Wholesale Club, it appears that Subject 3 conducted the unauthorized purchase.



*Subject 3 at BJ's Wholesale Club in Stratford, CT.*

### B. February 10, 2024, Surveillance Observations and Telephone Activity

16.     Around the time of the alleged theft on or about February 10, 2024, Avis Budget Group voluntarily provided the FBI with information indicating that a vehicle rented with a passport associated with BELLIDO COSIO ("Passport 1"), a GMC Terrain bearing Virginia license plate TSB5567 ("Vehicle 1"), was located at an address in Orange, Connecticut, which, based on open-source research, appeared to be in the vicinity of Trader Joe's.

17.     Based on this information, the FBI conducted physical surveillance in the locations of Trader Joe's in Orange, Connecticut and the nearby Costco in Milford, Connecticut. On that date, at approximately 12:35 p.m., Task Force Officer ("TFO") Decker located Vehicle 1 in a parking lot of a shopping center near Costco. TFO Decker later observed an individual, the driver

of Vehicle 1, exit the vehicle and begin walking across the parking lot in the direction of Costco. The individual appeared to match the physical appearance of BELLIDO COSIO and appeared to be wearing a grey and black North Face fleece, jeans, a blue baseball hat, and a black surgical mask, which is consistent with the clothing worn by BELLIDO COSIO at Trader Joe's during the time of the reported theft.[4] Based on TFO Decker's observations, the individual appeared to be utilizing his cellular telephone.

18. At approximately 12:47 p.m., TFO Decker observed a second individual who also appeared to be using his cellular telephone, walking on the sidewalk towards BELLIDO COSIO while carrying a brown cardboard box under his arm. The individual appeared to match the physical appearance of BANCES CHAPONAN and appeared to be wearing a brown winter jacket, a dark-colored baseball hat, and a black surgical mask, which is consistent with the clothing worn by BANCES CHAPONAN at Trader Joe's and Costco. BELLIDO COSIO and BANCES CHAPONAN then appeared to meet at another nearby store and walk across the parking lot towards Vehicle 1. Special Agent MacNamara subsequently captured the following photograph of the individuals believed to be BELLIDO COSIO and BANCES CHAPONAN entering Vehicle 1 with a brown cardboard box, which appears to be the same box that BANCES CHAPONAN carried in Costco:

---

[4] Based on other surveillance footage reviewed by law enforcement, the grey and black North Face fleece worn by BELLIDO COSIO on or about February 10, 2024, appears to be the same item of clothing worn during separate reported thefts that occurred throughout the United States.



*BELLIDO COSIO and BANCES CHAPONAN entering Vehicle 1 with a brown box near Costco on or about February 10, 2024.*

19.     At approximately 1:03 p.m., Subject 3 approached Vehicle 1 and entered the rear passenger door carrying a box under his arm.

20.     Vehicle 1 subsequently exited the parking lot, and, according to information voluntarily provided by Avis, began traveling on I-95 South, which, based on open-source research, appears to be the direction of the BJ's Wholesale Club at which the victim's M&T Bank debit card was used to conduct an unauthorized purchase shortly thereafter.

21.     Based on the timeline of the above surveillance observations as well as information obtained from the victim, Trader Joe's, Costco, and BJ's Wholesale Club, I believe that BELLIDO COSIO and BANCES CHAPONAN stole the victim's wallet at Trader Joe's and that BANCES CHAPONAN and Subject 3 subsequently utilized the victim's credit/debit cards to fraudulently

purchase merchandise at Costco in Milford, Connecticut and BJ's Wholesale Club in Stratford, Connecticut.

22.     Additionally, based on a review of historical cell-site location information obtained from T-Mobile pursuant to a federal search warrant, it appears that Target Telephone 1, which I believe was being used by BANCES CHAPONAN, was located in the area of Milford, Connecticut on or about February 10, 2024. Further, according to historical cell-site location information obtained from Verizon pursuant to a federal search warrant, Target Telephone 2, which I believe was being used by BELLIDO COSIO, was located in the areas of Orange/Milford, Connecticut and Stratford, Connecticut on or about the same date.

23.     According to call detail records obtained from Verizon pursuant to a subpoena, Target Telephone 2 communicated with a telephone believed to belong to Subject 3 approximately eight times between around 12:20 p.m. and around 1:21 p.m., which is around the same timeframe as the alleged theft at Trader Joe's and subsequent fraudulent purchases at Costco and BJ's Wholesale Club. Based on surveillance observations and an analysis of call detail records from the periods of other known or suspected thefts from around the United States, this telephone activity is consistent with other incidents, as it appears that BELLIDO COSIO and BANCES CHAPONAN communicate via telephone during these distraction thefts and subsequent fraudulent purchases.

24.     Accordingly, based historical cell-site location information, call detail records, surveillance observations, and information obtained from the victim, Trader Joe's, Costco, and BJ's Wholesale Club, I believe BELLIDO COSIO and BANCES CHAPONAN were involved in the theft at Trader Joe's and the subsequent purchases with stolen access devices at Costco and BJ's Wholesale Club in Connecticut on or about February 10, 2024, and that they used cellular telephones to coordinate the thefts and later purchases.

### C. March 13, 2024 Theft and Arrest

25. On or about March 12, 2024, the FBI obtained information from Avis indicating that Passport 1 had again been used to reserve a rental vehicle. On the morning of March 13, 2024, the FBI was informed that Passport 1 had been used to rent a black Jeep bearing New York license plate LJL4789 ("Vehicle 2").

26. Later in the morning on or about March 13, 2024, information obtained through federal search warrants revealed that both Target Telephone 1 and Target Telephone 2 appeared to be traveling in Connecticut. At approximately 12:00 p.m., Vehicle 2 was identified in the parking lot of a Trader Joe's located at 560 Boston Post Road, Orange, CT 06477. I subsequently observed BELLIDO COSIO and BANCES CHAPONAN approach the Trader Joe's entrance. BELLIDO COSIO entered the store while BANCES CHAPONAN appeared to be waiting outside while using his cellular telephone. Shortly thereafter, BANCES CHAPONAN also entered the Trader Joe's.

27. Based on information later reported by a victim, I believe that both BANCES CHAPONAN and BELLIDO COSIO subsequently left the Trader Joe's and entered an adjacent T.J. Maxx store. Inside T.J. Maxx, a customer reported that she was shopping when a man approached her holding two swimsuits. The victim reported that the man appeared to need assistance, and she showed him that both swimsuits cost $25. He nodded and moved away from her. The victim subsequently reached into her pocketbook for her glasses when she noticed that her wallet was missing.

28. At approximately 12:28 p.m., BANCES CHAPONAN and BELLIDO COSIO were observed returning to Vehicle 2. Vehicle 2 was then observed leaving the Trader Joe's/T.J. Maxx parking lot and driving to a nearby plaza, parking near a Galaxy Discount Flooring Center at 1770

Boston Post Road, Milford, Connecticut. Based on surveillance observations and open-source research, that parking lot is adjacent to the Costco Wholesale store in Milford, Connecticut.

29.     At approximately 12:35 p.m., BANCES CHAPONAN was observed entering the Costco adjacent to the Galaxy Discount Flooring Center. Inside the Costco, BANCES CHAPONAN was observed approaching the self-service kiosk in the electronics area. He was then seen retrieving approximately four beauty products, which he appeared to purchase at the self-checkout. Finally, he was seen approaching an employee service area, where he was observed interacting with an employee. The employee was then observed retrieving what appeared to be one or more electronic devices and handing it to BANCES CHAPONAN. BANCES CHAPONAN was then seen placing the items into a box and exiting the store.

30.     While BANCES CHAPONAN was in the Costco, another agent observed BELLIDO COSIO in the Galaxy Discount Flooring Center parking lot. BANCES CHAPONAN was later observed leaving Costco and entering the same parking lot with what appeared to be merchandise previously purchased from Costco. BELLIDO COSIO was initially observed walking in the direction of the Costco, but shortly thereafter, both BELLIDO COSIO and BANCES CHAPONAN were observed running in the direction of Vehicle 2.

31.     Both BELLIDO COSIO and BANCES CHAPONAN were then taken into custody. Incident to the arrests, **Subject Phone 1** was located on BANCES CHAPONAN's person, **Subject Phone 2** was located on BELLIDO COSIO's person, and **Subject Phone 3** was located in the glove box of Vehicle 2.

32.     According to call detail records and location information obtained from T-Mobile and Verizon pursuant to federal search warrants, Target Telephone 1 and Target Telephone 2 were communicating with each other near the Trader Joe's in Orange, Connecticut and the Costco in

Milford, Connecticut during the timeframe of the aforementioned events leading up to BELLIDO COSIO's and BANCES CHAPONAN's arrests on March 13, 2024.

33.     Accordingly, based on surveillance observations, call detail records and location information obtained from federal search warrants, and the locations from which **the Devices** were seized, I believe that **Subject Phone 1** belongs to BANCES CHAPONAN and corresponds with Target Telephone 1, that **Subject Phone 2** belongs to BELLIDO COSIO and corresponds with Target Telephone 2, and that BANCES CHAPONAN and BELLIDO COSIO utilized these cellular telephones to communicate with one another while committing the Target Offenses.

34.     Additionally, subsequent to the arrests on March 13, 2024, Special Agent MacNamara interviewed an individual who is believed to be BELLIDO COSIO's wife. During this interview, the woman provided Special Agent MacNamara with two telephone numbers for BELLIDO COSIO, including Target Telephone 2 and telephone number (908) 930-1735, which, according to records provided by Verizon pursuant to subpoena, was active and subscribed to "Angel Giancarlo" as of approximately January 23, 2024. Based on this information, it appears that BELLIDO COSIO has utilized two cellular telephones to communicate. Accordingly, I believe that **Subject Phone 3** could be an additional cellular telephone used by BELLIDO COSIO, and as such, it could contain evidence of violations of the Target Offenses.

35.     **Subject Phone 1**, **Subject Phone 2**, and **Subject Phone 3** are currently in the lawful possession of the FBI, having been seized incident to the arrests of BELLIDO COSIO and BANCES CHAPONAN. In my training and experience, I know that **the Devices** have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when **the Devices** first came into the possession of the FBI.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

36.     Based on my knowledge, training, and experience, I am aware that a mobile or cellular telephone, commonly referred to as a cell phone, is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

37.     Additionally, based on my knowledge, training, and experience and information from other law enforcement sources, including sources with expertise pertaining to the features and functionality of cellular telephones and computers, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

38.     Based on my knowledge, training, and experience, the fact that BELLIDO COSIO and BANCES CHAPONAN purchased multiple electronic devices, beauty products, and pharmaceutical products in a short period of time using stolen credit cards suggests that they intend

to sell these products for a profit rather than retain them for personal use. In my experience, individuals who sell fraudulently obtained products often communicate with potential buyers and co-conspirators via phone, text messages, voice messages, instant messages, and emails to coordinate sales. Further, in my experience, individuals who sell such products often take pictures or videos of the products to advertise or show to potential buyers. Finally, such individuals may use internet browsers and searches to identify stores as potential targets, to research the products they have obtained, to research websites through which to sell the products they have obtained, or to track packages containing merchandise.

39. *Forensic evidence.* As further described in Attachments B-1, B-2, and B-3, these applications seek permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how **the Devices** were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on **the Devices** because data on a cell phone can provide evidence of a file that was once stored on the cell phone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

40. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of these warrants does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrants at any time in the day or night.

## **CONCLUSION**

41.     I submit that this affidavit supports probable cause for search warrants authorizing the searches of **Subject Phone 1**, **Subject Phone 2**, and **Subject Phone 3**, as described in Attachments A-1, A-2, and A-3, to seek the items described in Attachments B-1, B-2, and B-3.

Respectfully submitted,

ANTHONY CRISERA
Digitally signed by
ANTHONY CRISERA
Date: 2024.03.21
10:23:23 -04'00'

Anthony Crisera
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me by telephone this 21st day of March 2024.

Robert M. Spector
Digitally signed by Robert
M. Spector
Date: 2024.03.21
11:54:38 -04'00'

HONORABLE ROBERT M. SPECTOR
UNITED STATES MAGISTRATE JUDGE

<u>**ATTACHMENT A-1**</u>

**Property to Be Searched**

**Subject Phone 1**: a blue Motorola cellular telephone, which was seized from Angel Eugenio BANCES CHAPONAN's person incident to arrest on March 13, 2024, and which is currently in the custody of the FBI in New Haven, Connecticut.

This warrant authorizes the forensic examination of **Subject Phone 1** for the purpose of identifying the electronically stored information described in Attachment B-1.

 

**Property to Be Searched**

**Subject Phone 2**: a silver Samsung cellular telephone in a hard case with "Mario" on the back, which was seized from Angel Giancarlo BELLIDO COSIO's person incident to arrest on March 13, 2024, and which is currently in the custody of the FBI in New Haven, Connecticut.

This warrant authorizes the forensic examination of **Subject Phone 2** for the purpose of identifying the electronically stored information described in Attachment B-2.




**Property to Be Searched**

**Subject Phone 3**: a blue/grey Samsung cellular telephone with a blue and bright yellow case with a clear back, which was seized from the glove compartment of a rental vehicle utilized by Angel Giancarlo BELLIDO COSIO and Angel Eugenio BANCES CHAPONAN incident to their arrests on March 13, 2024, and which is currently in the custody of the FBI in New Haven, Connecticut.

This warrant authorizes the forensic examination of **Subject Phone 3** for the purpose of identifying the electronically stored information described in Attachment B-3.

 

# ATTACHMENT B-1

## Particular Things to Be Seized – Subject Phone 1

All records and information on **Subject Phone 1** that relate to violations of Title 18, United States Code, Sections 1029(a)(2), (b)(1), and (b)(2) (Fraud and Related Activity in Connection with Access Devices and Attempt and Conspiracy) and Title 18, United States Code, Section 1028A (Aggravated Identity Theft), and involve Angel Giancarlo BELLIDO COSIO ("BELLIDO COSIO") and Angel Eugenio BANCES CHAPONAN ("BANCES CHAPONAN") for the time period of January 1, 2022 through the present, including:

a.  Lists of potential target stores, including stores targeted for thefts or stores at which stolen credit cards might be utilized;

b.  All records reflecting types, amounts, and prices of electronic devices, beauty products, medications, or other valuable non-perishable items, including but not limited to receipts for purchases;

c.  The Telephone number, ESN number, serial number, and SIM card number of **Subject Phone 1**;

d.  The numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of **Subject Phone 1**;

e.  Internet browsing history, to include, internet searches in the memory of **Subject Phone 1**;

f.  Images and videos in the memory of **Subject Phone 1**;

g.  All records reflecting BANCES CHAPONAN's or BELLIDO COSIO's schedule or travel, including but not limited to travel receipts, hotel receipts, or travel itineraries;

h.  GPS coordinates, waypoints, addresses, and location search parameters associated with GPS navigation software;

i.  All bank records, checks, credit card bills, account information, and other financial records;

j.  Shipment records, including but not limited to receipts for shipments or purchases at FedEx, United Parcel Service, or the United States Postal Service, including tracking information or searches via web browsers or other shipment tracking applications;

k.  Rental vehicle information, including but not limited to rental car agreements or receipts;

l.  Records, information, and data identifying victims, customers, associates, and co-conspirators, including but not limited to photographs, contact lists, and personal notes reflecting telephone numbers, email addresses, and phone records.

m.  Evidence of user attribution showing who used or owned **Subject Phone 1** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including

any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

It is specifically authorized that stored electronic information, data, information and images contained in the above-described device may be reproduced by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device(s).

To the extent that **Subject Phone 1** contains removable storage media and/or other devices, examination of such removable media and/or devices is specifically authorized for the same evidence as described in this attachment.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

**ATTACHMENT B-2**

**Particular Things to Be Seized – Subject Phone 2**

All records and information on **Subject Phone 2** that relate to violations of Title 18, United States Code, Sections 1029(a)(2), (b)(1), and (b)(2) (Fraud and Related Activity in Connection with Access Devices and Attempt and Conspiracy) and Title 18, United States Code, Section 1028A (Aggravated Identity Theft), and involve Angel Giancarlo BELLIDO COSIO ("BELLIDO COSIO") and Angel Eugenio BANCES CHAPONAN ("BANCES CHAPONAN") for the time period of January 1, 2022 through the present, including:

a. Lists of potential target stores, including stores targeted for thefts or stores at which stolen credit cards might be utilized;

b. All records reflecting types, amounts, and prices of electronic devices, beauty products, medications, or other valuable non-perishable items, including but not limited to receipts for purchases;

c. The Telephone number, ESN number, serial number, and SIM card number of **Subject Phone 2**;

d. The numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of **Subject Phone 2**;

e. Internet browsing history, to include, internet searches in the memory of **Subject Phone 2**;

f. Images and videos in the memory of **Subject Phone 2**;

g.  All records reflecting BANCES CHAPONAN's or BELLIDO COSIO's schedule or travel, including but not limited to travel receipts, hotel receipts, or travel itineraries;

h.  GPS coordinates, waypoints, addresses, and location search parameters associated with GPS navigation software;

i.  All bank records, checks, credit card bills, account information, and other financial records;

j.  Shipment records, including but not limited to receipts for shipments or purchases at FedEx, United Parcel Service, or the United States Postal Service, including tracking information or searches via web browsers or other shipment tracking applications;

k.  Rental vehicle information, including but not limited to rental car agreements or receipts;

l.  Records, information, and data identifying victims, customers, associates, and co-conspirators, including but not limited to photographs, contact lists, and personal notes reflecting telephone numbers, email addresses, and phone records.

m.  Evidence of user attribution showing who used or owned **Subject Phone 2** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including

any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

It is specifically authorized that stored electronic information, data, information and images contained in the above-described device may be reproduced by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device(s).

To the extent that **Subject Phone 2** contains removable storage media and/or other devices, examination of such removable media and/or devices is specifically authorized for the same evidence as described in this attachment.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

**ATTACHMENT B-3**

**Particular Things to Be Seized – Subject Phone 3**

All records and information on **Subject Phone 3** that relate to violations of Title 18, United States Code, Sections 1029(a)(2), (b)(1), and (b)(2) (Fraud and Related Activity in Connection with Access Devices and Attempt and Conspiracy) and Title 18, United States Code, Section 1028A (Aggravated Identity Theft), and involve Angel Giancarlo BELLIDO COSIO ("BELLIDO COSIO") and Angel Eugenio BANCES CHAPONAN ("BANCES CHAPONAN") for the time period of January 1, 2022 through the present, including:

a. Lists of potential target stores, including stores targeted for thefts or stores at which stolen credit cards might be utilized;

b. All records reflecting types, amounts, and prices of electronic devices, beauty products, medications, or other valuable non-perishable items, including but not limited to receipts for purchases;

c. The Telephone number, ESN number, serial number, and SIM card number of **Subject Phone 3**;

d. The numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of **Subject Phone 3**;

e. Internet browsing history, to include, internet searches in the memory of **Subject Phone 3**;

f. Images and videos in the memory of **Subject Phone 3**;

g. All records reflecting BANCES CHAPONAN's or BELLIDO COSIO's schedule or travel, including but not limited to travel receipts, hotel receipts, or travel itineraries;

h. GPS coordinates, waypoints, addresses, and location search parameters associated with GPS navigation software;

i. All bank records, checks, credit card bills, account information, and other financial records;

j. Shipment records, including but not limited to receipts for shipments or purchases at FedEx, United Parcel Service, or the United States Postal Service, including tracking information or searches via web browsers or other shipment tracking applications;

k. Rental vehicle information, including but not limited to rental car agreements or receipts;

l. Records, information, and data identifying victims, customers, associates, and co-conspirators, including but not limited to photographs, contact lists, and personal notes reflecting telephone numbers, email addresses, and phone records.

m. Evidence of user attribution showing who used or owned **Subject Phone 3** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including

any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

It is specifically authorized that stored electronic information, data, information and images contained in the above-described device may be reproduced by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device(s).

To the extent that **Subject Phone 3** contains removable storage media and/or other devices, examination of such removable media and/or devices is specifically authorized for the same evidence as described in this attachment.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

**Attachment C**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STATE OF CONNECTICUT | : | |
| | : | ss: New Haven, Connecticut |
| COUNTY OF NEW HAVEN | : | March 13, 2024 |

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST
WARRANTS**

I, Anthony Crisera, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent employed by the Federal Bureau of Investigation ("FBI").  As
such, I am a law enforcement officer of the United States within the meaning of Section 2510(7)
of Title 18 of the United States Code; that is, an officer empowered by law to conduct
investigations of, and make arrests for, offenses enumerated in Section 2516 of Title 18.

2.      I have been employed by the FBI since January 2021. I am currently assigned to
investigate a variety of criminal matters, including financial crimes such as securities fraud, bank
fraud, wire fraud, mail fraud, and cyber-enabled fraud. During my training at the FBI Academy in
Quantico, Virginia, I received instruction regarding a variety of investigative and legal matters,
including the topics of Fourth Amendment searches and seizures, the drafting of search and seizure
warrant affidavits, and the principles of probable cause. I am a Certified Public Accountant
("CPA"), and prior to my employment as a Special Agent of the FBI, I was employed as a Senior
Audit Associate at a major accounting and auditing firm in Charlotte, North Carolina. As a CPA,
I have gained experience in examining finance-related business processes, analyzing financial
information, and evaluating business expenditures.

1

3.      I have participated in this investigation and, as a result of my participation and information received from other law enforcement officers, I am thoroughly familiar with the circumstances of the investigation and the information set forth in this affidavit. The statements contained in this affidavit are based on: (1) my personal participation in the investigation; (2) information provided to me by Special Agents of the FBI and state and local law enforcement officers; and (3) my training and experience.

4.      This affidavit includes only those facts which relate to the need for, and propriety of, the complaint and arrest warrants. This affidavit does not purport to set forth all of the facts gathered during the course of the investigation of this matter but only sufficient information which establishes probable cause to believe that the defendants have violated federal law.

5.      Based on the facts set forth in this affidavit, I submit there is probable cause to believe that Angel Giancarlo BELLIDO COSIO ("BELLIDO COSIO") (YOB 1989) and Angel Eugenio BANCES CHAPONAN ("BANCES CHAPONAN") (YOB 1963) have committed violations of Title 18, United States Code, Section 1029(a)(2), (b)(1), and (b)(2) (Fraud and Related Activity in Connection with Access Devices and Attempt and Conspiracy);[1] and Title 18, United States Code, Section 1028A (Aggravated Identity Theft) (the "Target Offenses"), in the District of Connecticut and elsewhere.

---

[1] Section 1029 makes it unlawful to "knowingly and with intent to defraud, traffic in, or use one or more unauthorized access devices during any one-year period, and by such conduct obtain anything of value aggregating $1,000 or more during that period." The term "access device" includes credit cards, *see* 18 U.S.C. 1029(e)(1), and an "unauthorized access device" is defined as "any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud," *id.* § 1029(e)(3).

**PROBABLE CAUSE**

6.      Since in or around January 2024, the FBI has been investigating BELLIDO COSIO,

BANCES CHAPONAN and others, known and unknown, for possible violations of the Target

Offenses. Based on an analysis of the evidence compiled to date, including reviews of police

reports, surveillance footage, Avis Budget Group ("Avis") rental car information, historical cell-

site location information, court authorized prospective cellphone location information, FedEx

shipment information, UPS shipment information, and surveillance observations, the investigation

has revealed a pattern of criminal activity by BELLIDO COSIO, BANCES CHAPONAN, and

others, which has been consistent across a number of incidents in Connecticut and elsewhere. In

particular, BELLIDO COSIO, BANCES CHAPONAN, and others appear to have been routinely

renting vehicles from Avis using a fraudulent passport in order to travel throughout the United

States, including the District of Connecticut, to engage in ongoing distraction thefts to steal wallets

from unwary victims at Trader Joe's grocery stores and other retail stores. I believe that BELLIDO

COSIO, BANCES CHAPONAN, and others then use the victims' credit and/or debit cards from

within the stolen wallets to purchase electronic devices and other items, at least some of which

they subsequently ship via FedEx and UPS to an address in Paterson, New Jersey. The value of

the merchandise purchased by BELLIDO COSIO, BANCES CHAPONAN, and others over the

past year using stolen credit cards/access devices exceeds $1,000.  Further, based on my training

and experience, I know that credit and debit card transactions often involve the transmission of

electronic information across state lines and affect interstate commerce.  In addition, I believe that

merchandise obtained by use of the access device fraud is sent or transported in interstate

commerce.

7.      During a portion of the period in which violations of the Target Offense occurred, BELLIDO COSIO is believed to have used a cellular telephone assigned call number (862) 428-9993 ("Bellido Cosio Telephone"), which was activated on or about November 4, 2023, and deactivated on or about January 27, 2024.

8.      Further, on or about January 15, 2024, a Sergeant with the Fairfax County Police Department in Virginia sought and obtained search warrants for, among other things, historical cell-site location information for Bellido Cosio Telephone and for telephone number (917) 431-6128, which is a telephone number utilized by BANCES CHAPONAN ("Target Telephone 1"). The search warrants requested information for the period of July 25, 2023, through January 15, 2024.

9.      In addition, on or about February 16, 2024, I obtained a federal search warrant in the District of Connecticut for, *inter alia,* prospective information for thirty (30) days associated with Target Telephone 1 (No. 3:24MJ151 (MEG)). The search warrant was withdrawn and reissued on or about February 20, 2024.  Further, on or about February 27, 2024, I obtained a federal search warrant in the District of Connecticut for, inter alia, prospective information for thirty (30) days associated with (857) 202-1684 ("Target Telephone 2"), which is currently being used by BELLIDO COSIO (No. 3:24MJ164 (MEG)). Pursuant to those search warrants, the FBI is currently obtaining prospective location information for both Target Telephone 1 and Target Telephone 2.

**A.  January 2024 North Carolina Theft and FedEx Shipment**

10.      On about January 12, 2024, a victim reported to police in Cary, North Carolina, the possible theft of the victim's wallet while shopping at Trader Joe's. The victim's credit cards were subsequently used to purchase multiple Apple devices at a BJ's Wholesale Club in Cary, North

Carolina, and Costco in Apex, North Carolina. Additionally, multiple packages of menopause relief medicine were purchased at BJ's Wholesale Club using the victim's credit card.

11.     According to records obtained from FedEx Ground pursuant to subpoena, including FedEx tracking information, a package was shipped to a residence in Patterson, New Jersey ("New Jersey Address") from Durham, North Carolina on or about January 12, 2024.

12.     Further, according to historical cell-site location information obtained from T-Mobile pursuant to Virginia state search warrants, Target Telephone 1 and Bellido Cosio Telephone were located in the areas of Cary and Durham, North Carolina, on or about January 12, 2024. The Bellido Cosio Telephone was also located in the area of Apex, North Carolina on or about the same date. This location information is consistent with the locations of the reported theft and FedEx shipment in North Carolina. Accordingly, I believe that electronic equipment purchased with stolen access devices in North Carolina was shipped to the New Jersey Address.

**B.  January 14, 2024 Motor Vehicle Stop and FedEx Shipment**

13.     According to information voluntarily provided by Avis, a passport associated with BELLIDO COSIO ("Passport 1") was used to rent a black 2023 Toyota RAV4 bearing Missouri license plate RH2R8R ("Vehicle 1") on or about January 10, 2024.

14.     On or about January 14, 2024, investigators from the Fairfax County Police Department obtained information from Avis indicating that Vehicle 1 was located in Spartanburg, South Carolina. Investigators later contacted law enforcement personnel from the Spartanburg County Sheriff's Office and provided them with information about the ongoing investigation and about Vehicle 1.

15.     According to reports received from the Spartanburg County Sheriff's Office and Spartanburg Police Department, officers subsequently observed two subjects exit Vehicle 1 and

carry a box into a FedEx store. After the subjects returned to Vehicle 1, officers with the Spartanburg Police Department conducted a motor vehicle stop for speeding on the vehicle and identified three occupants in Vehicle 1, as BELLIDO COSIO, BANCES CHAPONAN, and a third individual.

16.     During the interaction with law enforcement personnel, BELLIDO COSIO provided officers with a New Jersey driver's license, which listed his address as the New Jersey Address. Additionally, BANCES CHAPONAN provided officers with a New York City identification card, which listed his address as 3318 105th St, Corona, New York ("Address 1").

17.     In addition, BANCES CHAPONAN and BELLIDO COSIO provided the following telephone numbers to the officers during the motor vehicle stop:

   a.   BANCES CHAPONAN: Target Telephone 1,

   b.   BELLIDO COSIO: Bellido Cosio Telephone, and

18.     Officers conducted a search of Vehicle 1 after a narcotics detection K-9 alerted on the vehicle. During the search, officers discovered two backpacks and a cardboard box with multiple tubes of toothpaste. In one of the backpacks, officers located a package of menopause medicine, which is the same type of product that was fraudulently purchased from BJ's Wholesale Club in the theft that occurred approximately two days prior in Cary, North Carolina. In addition, officers located a set of Apple AirPods Pro in a sealed box, one blue ballcap with lettering on the front, one white and black ballcap, and a Trader Joe's shopping bag. No illegal substances were located during the search of Vehicle 1.

19.     Officers subsequently seized the FedEx package that was previously dropped off by the subjects and later obtained a state search warrant for the package in South Carolina on or about January 17, 2024. The search of the FedEx package, which was executed on or about January

6

18, 2024, revealed that the package contained electronic devices, mostly Apple iPads. The FedEx package was addressed to BELLIDO COSIO at the New Jersey Address.

20.     Additionally, information associated with the tracking number on the seized package reflected that the package was scheduled to be shipped to the New Jersey Address from Spartanburg, South Carolina on or about January 14, 2024. This date is consistent with the motor vehicle stop in Spartanburg, South Carolina on that date, which I believe suggests that the packages would have been shipped to the New Jersey Address had they not been seized.

21.     Furthermore, according to historical cell-site location information obtained from T-Mobile pursuant to Virginia state search warrants, Target Telephone 1 and Bellido Cosio Telephone were located in the area of Spartanburg, South Carolina on or about January 14, 2024.

22.     The following photographs were taken of BELLIDO COSIO during the motor vehicle stop in Spartanburg, South Carolina on or about January 14, 2024:



*Photographs taken of BELLIDO COSIO during the motor vehicle stop in Spartanburg, SC.*

23.     According to New Jersey DMV records, BELLIDO COSIO's New Jersey driver's license lists his address as the New Jersey Address. BELLIDO COSIO's driver's license number also matches the one provided to officers during the motor vehicle stop in Spartanburg, South Carolina. New Jersey DMV records indicate that the below photograph is included on BELLIDO COSIO's driver's license:



*Photograph on BELLIDO COSIO's New Jersey driver's license.*

24.     The following photographs were taken of BANCES CHAPONAN during the motor vehicle stop in Spartanburg, South Carolina on or about January 14, 2024:

8



*Photographs taken of BANCES CHAPONAN during the motor vehicle stop in Spartanburg, SC.*

25.      A query of New York DMV records returned negative results for BANCES CHAPONAN, indicating that the identification card he provided to officers during the motor vehicle stop in Spartanburg, South Carolina is potentially fraudulent.

26.      According to information received from United States Immigration and Customs Enforcement, BELLIDO COSIO and BANCES CHAPONAN are currently in removal proceedings with United States Immigration. BELLIDO COSIO was deported to Peru three times, including once in or around 2013 and twice in or around 2016. He was paroled from United States Border Patrol custody after another encounter in or around 2022. BANCES CHAPONAN was encountered by United States Border Patrol in or around 2022.

### C. February 10, 2024 Connecticut Theft

27.    On or about February 10, 2024, the FBI identified a victim whose wallet was believed to be stolen at the Trader Joe's in Orange, Connecticut on or about the same date at approximately noon. Subsequent investigation revealed that the victim's USAA credit card and M&T Bank debit card had been fraudulently used to conduct purchases at Costco in Milford, Connecticut and at BJ's Wholesale Club in Stratford, Connecticut on that date. The below photograph, which was captured from surveillance footage obtained from Trader Joe's for the timeframe of the alleged theft, depicts two individuals ("Subject 1" and "Subject 2") leaving the Trader Joe's in Orange, Connecticut at approximately 11:50 a.m. on or about February 10, 2024.



*Subjects 1 and 2 leaving the Trader Joe's in Orange, CT on or about Feburary 10, 2024.*

28.     Based on information obtained from the victim and from Costco, it appears that the victim's USAA credit card was fraudulently used at Costco in Milford, Connecticut on or about February 10, 2024, at approximately 12:30 p.m., for an unauthorized purchase of an Apple MacBook, an Apple iPad, and Biofreeze, totaling around $3,235.45. Additionally, it appears that the victim's M&T Bank debit card was used at approximately 12:51 p.m. to attempt an unauthorized purchase for approximately $1,567.20, but the transaction was voided. At approximately 12:52 p.m., the victim's M&T Bank debit card was successfully used to fraudulently purchase an Apple iPad and Systane Ultra eyedrops, totaling approximately $1,184.13. The following photographs, which were captured from surveillance video obtained from Costco for the timeframe of the alleged unauthorized transactions, depict Subject 2 and another individual ("Subject 3") at Costco with what appears to be merchandise illegally purchased using the victim's credit and debit cards.



*Subject 2 at Costco in Milford, CT on or about February 10, 2024.*



*Subject 3 at Costco in Milford, CT on or about February 10, 2024.*

11

29.     According to information obtained from the victim and from BJ's Wholesale Club, the victim's M&T Bank debit card was also used at BJ's Wholesale Club in Stratford, Connecticut to conduct an unauthorized purchase of an Apple Watch for approximately $372.21 on or about February 10, 2024, at approximately 1:30 p.m. Based on a review of surveillance video obtained from BJ's Wholesale Club, it appears that Subject 3 conducted the unauthorized purchase.



*Subject 3 at BJ's Wholesale Club in*
*Stratford, CT.*

### D. February 10, 2024 Surveillance Observations and Telephone Activity

30.     Around the time of the alleged theft on or about February 10, 2024, the FBI obtained information from Avis indicating that a vehicle rented with Passport 1, a GMC Terrain

bearing Virginia license plate TSB5567 ("Vehicle 2"), was located at an address in Orange, Connecticut, which, based on open-source research, appeared to be in the vicinity of Trader Joe's.

31.     Based on this information, the FBI conducted physical surveillance in the locations of Trader Joe's in Orange, Connecticut and the nearby Costco in Milford, Connecticut. On that date, at approximately 12:35 p.m., Task Force Officer ("TFO") Decker located Vehicle 2 in a parking lot of a shopping center near Costco. TFO Decker later observed Subject 1, the driver of Vehicle 2, exit the vehicle and begin walking across the parking lot in the direction of Costco. Subject 1 appeared to match the physical appearance of BELLIDO COSIO and appeared to be wearing a gray and black North Face fleece, jeans, a blue baseball hat, and a black surgical mask, which is consistent with the clothing worn by Subject 1 at Trader Joe's during the time of the reported theft.[2]  Based on TFO Decker's observations, Subject 1 appeared to be utilizing his cellular telephone.

32.     At approximately 12:47 p.m., TFO Decker observed Subject 2, who also appeared to be using his cellular telephone, walking on the sidewalk towards Subject 1 while carrying a brown cardboard box under his arm. Subject 2 appeared to match the physical appearance of BANCES CHAPONAN and appeared to be wearing a brown winter jacket, a dark-colored baseball hat, and a black surgical mask, which is consistent with the clothing worn by Subject 2 at Trader Joe's and Costco. Subject 1 and Subject 2 then appeared to meet at another nearby store and walk across the parking lot towards Vehicle 2. Special Agent MacNamara subsequently captured the following photograph of Subject 1 and Subject 2 entering Vehicle 2 with a brown cardboard box, which appears to be the same box that Subject 2 carried in Costco:

---

[2] Based on other surveillance footage reviewed by law enforcement, the gray and black North Face fleece worn by Subject 1 on or about February 10, 2024, appears to be the same type of item of clothing worn during separate reported thefts that occurred throughout the United States.



*Subjects 1 and 2 Entering Vehicle 2 with a brown box near Costco on or about February 10, 2024.*

33.     At approximately 1:03 p.m., Subject 3 approached Vehicle 2 and entered the rear passenger door carrying a box under his arm.

34.     Vehicle 2 subsequently exited the parking lot, and, according to information voluntarily provided by Avis, began traveling on I-95 South, which, based on open-source research, appears to be the direction of the BJ's Wholesale Club at which the victim's M&T Bank debit card was used to conduct an unauthorized purchase shortly thereafter.

35.     Based on the timeline of the above surveillance observations as well as information obtained from the victim, Trader Joe's, Costco, and BJ's Wholesale Club, I believe that Subject 1 and Subject 2 stole the victim's wallet at Trader Joe's and that Subject 2 and Subject 3 subsequently utilized the victim's credit/debit cards to fraudulently purchase merchandise at Costco in Milford, Connecticut and BJ's Wholesale Club in Stratford, Connecticut.

36.     Additionally, based on a review of historical cell-site location information obtained from T-Mobile pursuant to a federal search warrant, it appears that Target Telephone 1 used by BANCES CHAPONAN was located in the area of Milford, Connecticut on or about February 10, 2024. Further, according to historical cell-site location information obtained from Verizon pursuant to a federal search warrant, Target Telephone 2 used by BELLIDO COSIO was located in the areas of Orange/Milford, Connecticut and Stratford, Connecticut on or about the same date.

37.     According to call detail records obtained from Verizon pursuant to subpoena, Target Telephone 2 communicated with a telephone believed to belong to Subject 3 approximately eight times between around 12:20 p.m. and around 1:21 p.m., which is around the same timeframe as the alleged theft at Trader Joe's and subsequent fraudulent purchases at Costco and BJ's Wholesale Club.  Based on surveillance observations and an analysis of call detail records from the periods of other known or suspected thefts from around the United States, this telephone activity is consistent with other incidents, as it appears that BELLIDO COSIO and BANCES CHAPONAN communicate via telephone during these distraction thefts and subsequent fraudulent purchases.

38.     Accordingly, based historical cell-site location information, call detail records, surveillance observations, and information obtained from the victim, Trader Joe's, Costco, and BJ's Wholesale Club, I believe that Subject 1 and Subject 2 are BELLIDO COSIO, BANCES CHAPONAN  respectively, and that they were involved in the theft at Trader Joe's and the subsequent purchases with stolen access devices at Costco and BJ's Wholesale Club in Connecticut on or about February 10, 2024.

### E.  Connecticut State Arrest Warrants

39.     In or around February 2024, state arrest warrants were issued in Connecticut for

BANCES CHAPONAN for larceny, payment card theft, illegal use of a payment card, and

conspiracy charges in connection with separate alleged thefts that occurred in Manchester,

Connecticut in or around 2023. The warrants remain active.

40.     In or around February 2024, state arrest warrants were issued in Connecticut for

BELLIDO COSIO for larceny, payment card theft, illegal use of a payment card, and conspiracy

charges in connection with separate alleged thefts that occurred in Manchester, Connecticut in or

around 2023. The warrants remain active.

### F.  March 13, 2024, Connecticut Theft

41.     On or about March 12, 2024, the FBI obtained information from Avis indicating

that Passport 1 had again been used to reserve a vehicle. On the morning of March 13, 2024, the

FBI was informed that Passport 1 had been used to rent a Black Jeep bearing New York license

plate LJL4789 ("Vehicle 3").

42.     Later the same morning, information obtained through federal search warrants

revealed that both Target Telephone 1 and 2 appeared to be traveling in Connecticut. At

approximately 12:00 PM, Vehicle 3 was identified in the parking lot of a Trader Joes located at

560 Boston Post Road, Orange, CT 06477. I subsequently observed BANCES CHAPONAN and

BELLIDO COSIO enter the Trader Joe's. I believe that both BANCES CHAPONAN and

BELLIDO COSIO subsequently left the Trader Joe's and entered an adjacent T.J. Maxx store

based on information later reported by a victim.

43.     Inside T.J. Maxx, a customer reported that she was shopping when a man

approached her holding two swimsuits. The victim reported that the man appeared to need

assistance, and she showed him that both swimsuits cost $25. He nodded and moved away from her. The victim subsequently reached into her pocketbook for her glasses when she noticed that her wallet was missing.

44.     At approximately 12:28 PM, BANCES CHAPONAN and BELLIDO COSIO were observed returning to Vehicle 3. Vehicle 3 was then observed leaving the Trader Joe's/T.J. Maxx parking lot and driving to a nearby plaza, parking near a Galaxy Discount Flooring Center at 1770 Boston Post Road, Milford, CT 06460. Based on surveillance observations and open-source research, that parking lot is adjacent to the Costco Wholesale store in Milford, Connecticut.

45.     At approximately 12:35 PM, BANCES CHAPONAN was observed entering the Costco adjacent to the Galaxy Discount Flooring Center. Inside the Costco, BANCES CHAPONAN was observed approaching the self-service kiosk in the electronics area. He was then seen retrieving approximately four beauty products, which he appeared to purchase at the self checkout. Finally, he was seen approaching an employee service area, where he was observed interacting with an employee. The employee was then observed retrieving what appeared to be one or more electronic devices and handing it to BANCES CHAPONAN. BANCES CHAPONAN was then seen placing the items into a brown box and exiting the store.

46.     While BANCES CHAPONAN was in the COSTCO, another agent observed BELLIDO COSIO in the Galaxy Discount Flooring Center parking lot. BANCES CHAPONAN was later observed leaving Costco and entering the same parking lot with what appeared to be merchandize previously purchased from Costco. BELLIDO COSIO was initially observed walking in the direction of the Costco.  Shortly thereafter, both BELLIDO COSIO and BANCES CHAPONAN were observed running in the direction of Vehicle 3.

47.     Both BELLIDO COSIO and BANCES CHAPONAN were taken into custody. Incident to the arrests, a search of Vehicle 3 was conducted. Inside the car, a roll of "dog poop bags" were recovered. A search of a nearby trash can later revealed a "dog poop bag" with items that appeared to belong to Victim 1.

## CONCLUSION

48.     Based on the foregoing, I believe that there is sufficient probable cause for the issuance of complaints and arrest warrants charging BELLIDO COSIO and BANCES CHAPONAN with Fraud and Related Activity in Connection with Access Devices and Attempt and Conspiracy in violation of Title 18, United States Code, Sections 1029(a)(2), (b)(1), and (b)(2), and 1028A.  As such, I respectfully request that a criminal complaint and arrest warrants be issued for BELLIDO COSIO and BANCES CHAPONAN.

_____
Anthony Crisera
Special Agent
Federal Bureau of Investigation


The truth of the foregoing affidavit has been attested to me by Special Agent Anthony Crisera of the Federal Bureau of Investigation on this 13th day of March, 2024 in New Haven, Connecticut.


_____
HONORABLE ROBERT M. SPECTOR
UNITED STATES MAGISTRATE JUDGE